CASE 17—PETITION ORDINARY—FEBRUARY 25.

# Brandts' Ex'r v. Donnelly.

### APPEAL FROM KENTON CIRCUIT COURT.

1. WHERE A SURETY IN THE BOND OF A PERSONAL REPRESENTATIVE PROCURES THE EXECUTION OF A NEW BOND, pursuant to sections 1 and 6 of chapter 104, General Statutes, containing a stipulation indemnifying him against "any loss, cost or damage legally incurred by reason of said suretyship," if judgment is obtained against him upon the old bond, and he, in good faith, prosecutes an appeal from the judgment, the indemnitor is liable to him for the legal or court costs incurred upon the appeal, and also the damages upon affirmance of the judgment. But unless the indemnitor encouraged or directed a continuation of the defense by appeal, or upon the whole case such a course appeared palpably to be to his advantage, the extraordinary costs of the appeal, such as attorneys' fees, are not chargeable to him.

2. SAME.—In an action against the indemnitor upon the bond executed by him, it is no defense that the principal appeared and executed the bond without notice having been served on him.

CLEARY & HAMILTON FOR APPELLANT.

1. The county courts are courts of limited jurisdiction, and derive all their powers from express statutory enactments. (Gilchrist v. Bartlett, 9 Bush, 49.)

    There is no jurisdiction in the county court under section 1 of chapter 104, General Statutes, unless the steps required by that statute are taken. The jurisdiction can not be acquired by consent.

2. Donnelly was bound on his bond of 1876. It does not appear when the abstraction of the moneys took place, but it was before the 27th of June, 1879, and if the indemnity was not then had in accordance with the provisions of the statute, the stipulation was without consideration, and could not be enforced as a common law obligation.

3. The denial of appellee's right to recover attorneys' fees, costs and cost of supersedeas on judgment since its date of September, 1888, was proper. It was Donnelly's duty to have stopped with the judgment of September, 1888. (87 Ky., 259; 13 Ky. Law Rep., 82.)

HALLAM & MYERS FOR APPELLEE.

1. The failure to give notice was immaterial. The principal had the right to waive it and enter his appearance.

2. An executor may be sued even after he has finally distributed the es-- tate. (Baldwin v. Shine, 84 Ky., 502.)

3. Brandts' obligation was to pay not merely the principal, but also interest, costs, lawyers' fees and other expenses, including the costs of appeal. Brandts or his representative ought to have notified Donnelly not to appeal if they did not desire him to carry further his desperate fight for their benefit.

4. Donnelly did not pay any thing until June 21, 1891, and, therefore, never had a cause of action until then.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

Section 1 of chapter 104 of the General Statutes provides that if a surety on the bond of a personal representative wishes to be relieved from future liability, and to obtain indemnity for such as may have been incurred, or either, he may, by notice, require the principal obligor to appear before the court in which the original bond was given, and if a new bond (see section 6, same chapter) is given, it shall operate a discharge of the surety from all liability for the acts of the principal thereafter done; and if the object be so specified, the bond shall contain a stipulation or covenant to indemnify the surety against any loss, cost or damage legally incurred by reason of said suretyship.

In the Kenton County Court, on the 27th of June, 1879, E. H. Brandts, the intestate of the appellant, executed bond as surety of one L. J. Blakely, administrator of John Pepper, deceased, covenanting in the usual form that Blakely should well and truly administer the goods, &c., of Pepper, and further covenanting to indemnify Charles Donnelly, now the appellee, and who was the former surety of said Blakeley as administrator of said Pepper, against any loss, cost or damage legally incurred by reason of his suretyship.

It appears that prior to the execution of this bond, there had come to the hands of Blakely, of the estate of Pepper, some four thousand dollars, to provide against the possible payment of which by himself, Donnelly had taken the proper steps to obtain the indemnifying bond of Brandts of June, 1879, as provided for under the sections of the statute, *supra*.

Thereafter, in March, 1881, William Pepper, sole distributee of John Pepper, instituted his action against Brandts and against Donnelly, on their respective bonds, to recover the amount alleged to be in Blakely's hands, or wasted by him, coming to said distributee. Pending the action, various payments were made on the demand—possibly by Brandts—who, however, died in 1885, and the action was thereupon discontinued as to him.

In September, 1888, Pepper recovered judgment against Donnelly, who then appealed to this court, where, in March, 1891, the judgment was affirmed. The amount of it, including the debt, interest and costs up to July 21, 1891, was three thousand and ten dollars and thirty cents. To recover which, and also the sum of two hundred and thirty dollars and forty-five cents paid his attorneys in his defense of said suit, and also twenty dollars, the cost of printing a brief in the Court of Appeals, the appellee brought this action against the executor of Brandts. His petition sets out in detail the foregoing facts. The appellant, as such executor, filed his answer in some seven paragraphs, to each of which a general demurrer was sustained. He tendered an amended answer which was rejected, and declining to plead further, judgment was ren-

dered against him *de bonis testatoris*, and from this he appeals.

By his first paragraph he denies that Donnelly caused a written notice to be served on Blakely to appear and execute the bond of June, 1879, and his counsel insist that thereby the county court of Kenton, by reason of its being a court of limited jurisdiction, could not accept the bond voluntarily executed by Brandts. He denies that Blakely and Brandts executed and acknowledged such bond "*pursuant to such notice*," or that such bond was "*duly*" accepted. In another paragraph he alleges that the bond in question was signed in the clerk's office and not in the court-house, and that the *judge* made no order allowing said bond to be executed.

The statute of limitation is also pleaded in another paragraph, although Donnelly's damnification had occurred only a few months before the institution of the action. The annihilation of the trust is set up, based on the alleged final distribution of the assets in the executor's hands.

That these averments are wholly insufficient to support a defense is manifest, and without burdening the record with details, it is sufficient to say that nowhere in the answer or amended answer is there to be found a statement of fact sufficient to constitute or support a defense, unless in the fifth paragraph of the original answer as amended. There the defendant denies that the plaintiff is entitled to be reimbursed for expenditures in the way of interest, costs, lawyers' fees, or any other expenses paid or incurred since the judgment in the Pepper case of

September 21, 1888; and he alleges that, embraced in the sum sued for, are the sums of two hundred and thirty dollars and forty-five cents for attorneys' fees; twenty dollars for printing brief; two hundred and twenty-nine dollars and ninety cents, ten per cent. damages on supersedeas; one hundred and twenty dollars for officers' fees and costs—all incurred after the judgment of September, 1888, and incurred by reason of the alleged unnecessary appeal of said Donnelly.

These denials and statements, we think, are sufficient to raise the legal question as to whether these extraordinary costs can be recovered of the indemnitor on the bond of June, 1879.

It seems certain enough that the legal or court costs, including the damages on affirmance of the judgment in the appellate court, are embraced expressly in the language of the bond. These costs and damages are the precise liabilities against paying which the indemnitee provided by obtaining this bond. This cost and expense the appellant could have stopped at any time by paying the debt his intestate had bound himself to pay, or even by notifying the appellee not to prosecute the appeal unless at his own expense. The general rule seems to be that in cases of this kind all such cost may be recovered when nothing appears to indicate bad faith in making the defense, and in this way incurring cost. But the general rule seems otherwise when it comes to extraordinary costs, such as attorneys' fees, &c.; and certainly in the absence of a showing that these fees were incurred for the benefit or attempted benefit of Brandts' estate, or at the instance of his ex-

ecutor, the appellant should not be held bound for them. The appellee could have stopped, and that, too, with a consciousness of having done all he could to prevent recovery, upon the rendition of the judgment in September, 1888. The action had been instituted in March, 1881, and more than seven years had elapsed before the judgment was obtained. The appeal may have been taken solely or mainly to benefit Donnelly. It may have been done without any reasonable or probable expectation of success, and may not have been on the merits of the case, but with the knowledge that its prosecution could not in anywise result beneficially to the estate of Brandts. In such cases it would seem that unless the indemnitor encouraged or directed a continuation of the defense by appeal, or upon the whole case such a course appeared palpably to be to his advantage, such extraordinary costs are not chargeable to him.

Therefore, solely for the reason that it allows these two items of two hundred and thirty dollars and forty-five cents and twenty dollars, the judgment of the lower court is reversed, with directions to enter judgment in accordance with this opinion.